JACKSON v. TAYLOR. (No. 7762.)

(Court of Civil Appeals of Texas. Ft. Worth. April 11, 1914.)

1. LANDLORD AND TENANT (§ 326*) — FARM LEASES—CONSTRUCTION.

Where a farm lease on shares required the tenant to plant specified crops, and provided that, as soon as the crops were gathered, the land should revert to the possession of the landlord, the tenant is not, where the specified crop failed, entitled to the same share of a substitute crop; the lease expressly providing for the possession to revert to the landlord.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1367–1378; Dec. Dig. § 326.*]

2. LANDLORD AND TENANT (§ 331*) — FARM LEASES—EVIDENCE.

Where a lessee of a farm on shares claimed part of the hay raised after the failure of the crop required by the lease, evidence that landlords in that vicinity allowed their tenants to harvest hay grown after the usual crops had failed because of drought, just as if it had been the crop planted, is admissible on the question of whether the landlord agreed to allow the lessee to harvest such hay.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1360–1362, 1379–1387; Dec. Dig. § 331.*]

3. TROVER AND CONVERSION (§ 54*)—MEASURE OF DAMAGES.

Where a landlord converted hay belonging to the tenant, the measure of damages is the market value of the hay converted; hence the expense of hauling the hay to market would be immaterial.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 252, 255–257; Dec. Dig. § 54.*]

4. LANDLORD AND TENANT (§ 331*)—CROPPING CONTRACT—EVIDENCE.

Where a landlord converted hay belonging to his tenant, the measure of damages is the market value of the hay, and so evidence that the tenant had agreed to sell the hay at a fixed price is inadmissible, where the landlord had no notice of such contract.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1360–1362, 1379–1387; Dec. Dig. § 331.*]

5. TROVER AND CONVERSION (§ 54*)—DAMAGES—MEASURE.

Where a landlord converted hay belonging to her tenant, she cannot recover expenses incurred in baling the hay.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 252, 255–257; Dec. Dig. § 54.*]

Appeal from Young County Court; E. W. Fry, Judge.

Action by Mary S. Taylor against G. W. Jackson. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

C. W. Johnson, of Graham, and Theodore Mack, of Ft. Worth, for appellant. R. F. Arnold and Kay & Akin, both of Graham, for appellee.

CONNER, C. J. G. W. Jackson was a tenant of Mary S. Taylor for the year 1911, and this suit was instituted by the latter to recover some Colorado grass hay alleged to have been converted by Jackson. The plaintiff, at the time of the institution of the suit, sued out a sequestration writ which was levied upon the hay. The defendant having failed to replevy the hay, the plaintiff did so, and the same, 2,200 bales valued at 40 cents per bale, was delivered to her by the sheriff. The plaintiff claimed the hay by virtue of her ownership of the land under the terms of a written lease to the defendant. The defendant also claimed under the lease, and further specially pleaded an oral agreement with the plaintiff by the terms of which he (the defendant) was to cut and bale the hay free of cost to the plaintiff and to deliver to her one-fourth as rent. A trial before a jury resulted in a verdict and judgment for the appellee, and the defendant has appealed.

[1] The written lease between the parties provided that Jackson was to plant, work, and gather on the land rented to him 75 acres of cotton, 15 acres of corn, 5 acres of sorghum cane, and 10 acres of maize, and to deliver to Mrs. Taylor one-fourth of the cotton, one-third of the corn, and one-third of the wheat, oats, millet, and sorghum (also permitted) raised on the premises. The lease further stipulated that the crops should be planted, worked, and gathered in due season, and on failure or refusal to so do by the tenant the landlord might have it done and take the cost out of the tenant's part of the crops. It was further provided that "as soon as a crop is gathered, or could have been gathered by the use of proper industry, the land returns to the possession of the landlord for his disposal, for the next succeeding year, and at any time after the small grain has been taken off that the land may be used by the landlord, but not to the injury of the tenant or crops on the ungathered part of the premises."

The proof shows that Jackson properly plowed and planted some 15 acres of corn and some 75 to 80 acres of cotton and a number of acres in sorghum, but that there was an utter failure of from 25 to 30 acres of the cotton and some of the sorghum land because of a severe drought. Upon this part of the land, which had been cultivated and left level, Colorado grass sprang up and was allowed to grow, and later in the season was harvested and partly baled by Jackson; he tendering the plaintiff one-fourth thereof as rent. The defendant Jackson and his son both testified, as substantially alleged in his answer, that after the failure of the crops

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

he went to Mrs. Taylor and stated the situation to her and inquired whether she thought it best that he try to plant the land in maize or sorghum, or let it remain for the growth of Colorado grass, and that Mrs. Taylor stated that he might exercise his own judgment in the matter, which he did to their mutual profit. Mrs. Taylor, however, denied any such agreement.

The majority at least are of the opinion that the written lease did not confer upon the defendant a right to the Colorado grass in question, and that therefore there was no error in the charge of the court so instructing, as complained of in the fourth assignment, and in refusing special charges Nos. 2 and 3 of contrary import, as urged in assignments Nos. 8 and 9.

[2] We are of the opinion, however, that the court erred in excluding the testimony of G. W. Wiley, J. E. Parsons, and Robert McLaren, as urged in the second assignment, to the effect that it was the custom in the neighborhood of the rented premises during the year 1911 for the tenant to harvest Colorado grass grown upon lands upon which the usual crops had failed because of the drought and take three-fourths thereof, rendering to the landlord one-fourth. The testimony, as shown by the bill of exception taken to its exclusion, was offered "to corroborate the defendant Jackson in his claim of a verbal understanding with the plaintiff," and was objected to on the ground that it was immaterial. The conflict between the plaintiff and defendant on the issue of the subsequent agreement, upon which alone the case was submitted by the court, was sharp, and we think the evidence tendered admissible for the purpose offered as a circumstance rendering more probable the evidence of the defendant and his son in favor of the agreement. See Kocher v. Mayberry, 15 Tex. Civ. App. 342, 39 S. W. 604; Paine v. Argyle Merc. Co., 133 S. W. 895; and the recent case by this court, No. 7827, E. B. Carver et al. v. Power State Bank, 164 S. W. 892, not yet officially reported. For the error of the court in the exclusion of the testimony, we think the judgment must be reversed, and the cause remanded for a new trial.

[3-5] In the event of a recovery by appellant, his measure of damage will be the market value of the hay converted by the plaintiff, less the part, of course, due her as rent, and hence the cost of hauling the same to market would be immaterial, as the court below ruled. So, too, the court properly rejected evidence that appellant had sold part of the hay baled by him at 50 cents per bale; there being no evidence that the appellee had notice of any such contract. If in fact appellant should show himself entitled to recover under the special agreement set up by him, the plaintiff would not be entitled to a deduction of the expenses incurred by her in baling that part of the sequestered hay that she did, as was instructed by the court, in the second paragraph of his charge. See Ripy v. Less, 55 Tex. Civ. App. 492, 118 S. W. 1084; Tignor v. Toney, 13 Tex. Civ. App. 521, 35 S. W. 881.

We find no error in other rulings of the court, or anything requiring further notice, but, for the error discussed, it is ordered that the judgment be reversed, and the cause remanded for another trial.