TAYLOR v. JACKSON et al.   (No. 8273.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 27, 1915.)

1. WITNESSES �köù37—COMPETENCY.

A witness who stated that he knew the custom in the vicinity of plaintiff's land as to the distribution of Colorado grass hay between landlord and tenant is competent to testify thereto.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 80–87; Dec. Dig. ⊸37.]

2. CUSTOMS AND USAGES ⊸19—EVIDENCE.

In an action to recover from a farm tenant Colorado grass hay grown on demised land, where the tenant offered evidence of a custom allowing tenants to retain a portion of such hay, testimony by the landlord that there was no such custom in the vicinity and that her other tenants had not claimed the hay is admissible; the transactions with the other tenants tending to show that the custom was not a general and uniform one.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 41–43, 45, 46; Dec. Dig. ⊸19.]

3. LANDLORD AND TENANT ⊸331—DAMAGES —EVIDENCE.

Where after the institution of a suit to recover hay grown on demised land the landlord sequestered and later replevied the hay, evidence of the price at which defendant had sold the hay is admissible on the question of his damages on his plea in reconvention; for, there being no evidence that the tenant was insolvent or had been given a special price to enable the purchaser to collect a bad debt, such evidence was admissible on the issue of special damages.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1360–1362, 1379–1387; Dec. Dig. ⊸331.]

4. TRIAL ⊸350—SPECIAL DAMAGES—SUBMISSION.

Where there was nothing to show defendant's insolvency or that by reason thereof he was enabled to sell the replevied property at an

unusual price so that the purchaser could collect a bad debt, the issue of special damages in depriving defendant of the benefit of the contract caused by the act of replevying the property is properly submitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. ☜350.]

**5. APPEAL AND ERROR ☜1062—VERDICT—ANSWER TO INTERROGATORIES.**

Where answers to other interrogatories showed the number of bales of hay replevied by plaintiff which had been sold by defendant, no complaint can be made that the court received the verdict without requiring a finding as to the specific number of bales which defendant had sold.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. ☜1062.]

**6. CUSTOMS AND USAGES ☜19 — EVIDENCE — ADMISSIBILITY.**

Where a tenant, by virtue of a custom, claimed part of a crop of Colorado grass hay grown on the land, evidence of the custom in the locality, though not in the immediate vicinity, is admissible.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 41–43, 45, 46; Dec. Dig. ☜19.]

**7. LANDLORD AND TENANT ☜331 — FARM LEASES—BREACH OF COVENANT.**

A farm lease provided for the cultivation of cereals and cotton, but did not provide for the cultivation of hay. After a crop failure, hay was raised, and the landlord claimed the whole crop. The lessee asserted that the landlord consented to the planting of the premises in hay, and that there was a general custom that he should receive a portion of it. It appeared that before the hay had all been gathered the landlord entered and prevented the tenant from gathering the remainder. *Held* that, if the general custom did not exist or become part of the contract, the law would imply an obligation on the part of the landlord to compensate the tenant for his services, in which case his measure of damages would be the value of the services already rendered, plus the reasonable value of the services which would have been rendered, less the amount he might have earned at other employment by the exercise of ordinary diligence.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1360–1362, 1379–1387; Dec. Dig. ☜331.]

**8. LANDLORD AND TENANT ☜331 — FARM LEASES—COVENANTS.**

Where by virtue of a special custom a tenant was entitled to a portion of the Colorado grass hay produced on the premises, the lessor, who wrongfully took the hay, cannot offset as against the tenant the amount she expended after breach in order to harvest it.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1360–1362, 1379–1387; Dec. Dig. ☜331.]

**9. APPEAL AND ERROR ☜248—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.**

Where appellant urged no exception to the sufficiency of defendant's plea, and failed to complain of the court's failure to submit material questions to the jury, those matters cannot be complained of on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1432, 1435–1439, 1443, 1447–1452, 1454–1459, 1462, 1464–1468; Dec. Dig. ☜248.]

**10. CUSTOMS AND USAGES ☜12—VALIDITY OF CUSTOM.**

Customs and usages applicable to the letting of farms which are certain, uniform, and uninterrupted, and long continued in the locality, are binding on parties to a lease of farm lands, and they are presumed to know them.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 23, 24; Dec. Dig. ☜12.]

**11. CUSTOMS AND USAGES ☜17 — ENFORCEMENT.**

Caution should be used in enforcing special customs and usages varying a contract.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 34; Dec. Dig. ☜17.]

Appeal from Young County Court; W. P. Stinson, Judge.

Action by Mary S. Taylor against G. W. Jackson and another, in which defendant Jackson pleaded in reconvention. From judgment for defendant Jackson, plaintiff appeals. Reversed and remanded.

Fred T. Arnold, of Graham, and Arnold & Taylor, of Henrietta, for appellant. C. W. Johnson, of Graham, for appellee.

DUNKLIN, J. Mrs. Mary S. Taylor instituted this suit against G. W. Jackson, her farm tenant, to recover Colorado grass hay which had grown on the leased farm and had been cut and baled by Jackson. After the institution of the suit the plaintiff sequestered the hay, and later replevied it. From a judgment denying the plaintiff a recovery and in favor of Jackson for damages on his plea in reconvention, plaintiff, Mrs. Taylor, has appealed. The case was before us on a former appeal, and the opinion of this court upon the question then presented appears in 166 S. W. 413.

The land was leased to Jackson and his associate, J. F. Biffle, for the year 1911 by written contract, by the terms of which the tenants agreed to cultivate the same in cotton, corn, wheat, millet, oats, sorghum, and maize, and to give to the landlord as rent one-fourth of the cotton and one-third of the other crops, but the lease contained no reference to any crop of hay. Upon the former appeal we held that the written lease did not confer upon the tenants any right to the Colorado grass hay in controversy, which grew upon part of the land after the crops planted thereon by the tenant had failed by reason of the severe drought. The proof showed that, while the lease was to Biffle and Jackson, Jackson was, in fact, a subtenant of Biffle, who had originally leased the land, but who had no interest in the crops.

In his answer the defendant claimed that subsequent to the written lease a parol agreement was made with the landlord, by the terms of which he had the right to harvest the hay the same as any other crop, the allegation setting forth that agreement being as follows:

"About the 17th day of June, 1911, the defendant informed the plaintiff that the corn had failed, and that he had failed to get a stand of cotton, and that reliance must be had on feedstuff. The defendant stated that the only chance was to try maize or rely on Colorado grass for a crop in event of late rains, without which

nothing would do. Thereupon the plaintiff told the defendant to determine what was best course to pursue to make the most for plaintiff and defendant. The plaintiff got what information he could, and determined that Colorado hay crop was more promising and more desirable and valuable than maize. Subsequent results justified defendant's conclusion to rely on the hay crop, and about 2,300 bales of hay were made on the land. If the plaintiff had not left it to the judgment of the defendant to determine the course to pursue in adjustment of the crops on the failure of the spring crops, the defendant would have replanted it in maize, millet, and sorghum. The defendant charges that the written contract did not contemplate a failure of the spring crops, nor provide for such emergency, and defendant relied on plaintiff's statement to the defendant that he was authorized to determine what was for their mutual benefit, and the defendant judged wisely."

Following that allegation the defendant further alleged that it was the custom and common understanding in that vicinity for the tenant to give to the landlord as rent one-third of any Colorado grass hay in shocks, or one-fourth in bale, free of all charges. He further alleged that the yield of hay .was much larger than it would have been because of the cultivation of the land for the crops which had failed before the grass sprang up.

The verdict of the jury was upon special issues, and one of the findings was that the parol contract pleaded by the defendant was, in fact, made as alleged.

[1] In order to establish the custom pleaded by the defendant, the deposition of J. E. Parsons was read. · One of the questions propounded to him was:

"If you know, state what the custom was in the vicinity of the plaintiff's land for the year 1911 as to the distribution of Colorado grass, between the landlord and tenant, produced on the land that had been cultivated in other crops that had failed on account of climatic conditions. State what part of such hay the tenant received and what part the landlord received, according to the custom of the vicinity of the premises."

To that question the witness answered as follows:

"The third in the shock or the fourth in the bale. The landlord got one-third in the shock or one-fourth in the bale, and the tenant two-thirds in the shock or three-fourths in the bale."

The objection to this testimony was that the witness had not qualified, in that he had not stated that he knew of such custom in that particular section of the country. The form of the question being, "If you know," we think the answer of the witness was equivalent to a statement that he did know of such custom. Accordingly the assignment is overruled.

[2] Plaintiff offered to prove by herself as a witness the following facts:

"That she was familiar with the custom of the country relative to the cutting of Colorado grass hay, and that the same was that the landlord was entitled to one-third of Colorado grass hay springing up on the place, and that the tenant was not entitled to any of it, and that her other tenants on land adjoining the defendant Jackson did not claim the hay growing on their land, but that the plaintiff had cut the same herself, and that the other tenants did not object

thereto, or claim any of the hay on the land rented by them."

The defendant Jackson objected to that testimony, on the ground that the same was immaterial and not binding upon him. Appellant has addressed an assignment of error to the action of the court in sustaining that objection. It appears from the bill of exception that the evidence was offered as a whole. In appellee's brief no contention is made that the testimony relative to the custom of the country was not admissible, but it is insisted that proof of individual transactions with other tenants was clearly so, and that, as the evidence was offered as a whole, no reversible error is shown. We are of opinion that none of that testimony should have been excluded. The transactions with other tenants tended to show that the custom mentioned by Parsons was not a general and uniform custom, as his testimony indicates, and hence tended to rebut the presumption which otherwise might obtain that plaintiff contracted with reference to it. 3 Jones' Commentaries on Evidence, §§ 463, 464, and other authorities hereinafter cited. It should be noted further that the testimony of the witness Parsons, shown above, as well as all other witnesses introduced by defendant to prove custom, and which was to the same effect, and all of which was offered generally without the limitation of its· purpose placed upon such evidence on the former trial, bore only indirectly upon the issue of custom, if any, obtaining under a specific contract of employment to harvest hay, with no express agreement for compensation to the employé, as pleaded by the defendant. Notwithstanding that fact, plaintiff should have been allowed to rebut such evidence by proof that no such custom prevailed under the circumstances related by defendant's witnesses.

[3, 4] Over objection of the plaintiff the defendant was permitted to introduce in evidence the testimony of the witness D. G. Vick that he had bought the hay from the defendant Jackson and was to pay him for the same at the rate of 50 cents per bale, which sum was to be paid, not in cash, but was to be credited upon an account owing to him by Jackson for goods sold. The ground of plaintiff's objection was that the measure of defendant's damages would be the market value of hay upon the farm, and for the further reason that plaintiff had no notice of any sale to Vick, except through Vick himself, which came to her after the hay had been seized under a writ of sequestration, that the price offered by Vick was not the market value of the hay, and that the offer· was made merely for the purpose of collecting a bad debt. The same contention, that the market value of the hay in controversy at the time of its seizure was the only correct measure of the defendant's damages, is· also made the basis of complaint of the ruling of the court in submitting to the jury·

special issues directing the jury to determine whether or not the defendant had the hay sold to Vick when it was levied on by the writ of sequestration, if so, at what price per bale and how many bales were sold, and whether or not the plaintiff had had notice of such sale prior to the time she replevied the hay.

In his answer the defendant pleaded specially that prior to the levy he had contracted to sell the hay to Vick at 50 cents per bale, and that plaintiff had notice of such contract at the time she replevied the hay, and upon those facts he sought a judgment for special damages in the sum he would have realized from such sale. The findings of the jury in answer to special issues 5, 6, 7, and 8 are made the basis of the claim for such special damages.

We are of the opinion that there was no error in the action of the court in admitting the testimony of Vick referred to, and in submitting the issue of special damages, since, under the circumstances, they were recoverable; no contention being made on either trial that Jackson was insolvent at the time. We so held on the former appeal of this case.

[5] In answer to interrogatory No. 3, the jury found that the plaintiff had received 2,147 bales of hay, and in answer to the fourth interrogatory that the market value of such hay was 32 cents per bale. The fifth interrogatory and the answer of the jury thereto are as follows: "Did the defendant G. W. Jackson have the hay sold to D. G. Vick." Answer: "Yes." Thus it appears that the jury found that Vick had contracted to buy the entire number of 2,147 bales. In view of that finding, it was unnecessary to repeat the same in answer to the sixth interrogatory. Accordingly appellant's assignment, in which complaint is made of the action of the court in receiving the verdict without requiring a finding by the jury in answer to the sixth interrogatory of the specific number of bales which Vick had contracted to buy, is overruled.

[6] To rebut proof introduced by defendant of the alleged custom relative to Colorado grass hay grown on leased land, plaintiff offered Frank Herron, who testified that he owned land growing Colorado grass about two miles from the farm rented by defendant and was "acquainted with the custom of the country in reference to harvesting Colorado grass hay growing up on the premises of the landlord," but did not know the custom in Goose Neck Bend, the immediate vicinity of plaintiff's farm. Plaintiff then offered to prove by that witness that the custom of the country was that the tenant would have no right to any part of such hay springing up on the land after the crops planted on the land by the tenant have been gathered or have failed in the absence of a special contract with the landlord for such interest, and

that the division of the hay between the landlord and tenant would be governed by the terms of such special contract. Defendant objected to the proof so offered, on the ground that it did not appear that the witness was acquainted with the custom in the vicinity of plaintiff's farm, and that objection was sustained. We are of opinion that the court erred in that ruling, as the test applied for a qualification of the witness to give such testimony was too restrictive, especially in the absence of any evidence to show that the alleged custom was peculiar to Goose Neck Bend, as distinguished from the rest of the country.

[7] The special contract alleged by the defendant as a basis for his counterclaim did not include as one of its terms a specific agreement between the parties that the tenant should have three-fourths of the hay and plaintiff one-fourth. The contract alleged was silent upon the question of compensation which the tenant should receive for his services in cutting and baling the hay; and, in the absence of some custom which would control and determine the consideration he should receive for such services, the law would not give him any title to any part of the hay, but would imply an obligation on the part of the landlord to pay in money the reasonable value of such services. And if such custom did not exist, or did exist, but did not impliedly enter into and become a part of the special contract, then the measure of defendant's damage for breach of the contract would be the reasonable value of services performed by defendant prior to the breach, plus the reasonable value of such services as he would have performed thereafter but for the breach, less the amount, if any, he did earn or by the exercise of ordinary diligence could have earned at some other employment during the period which reasonably would have been required to finish harvesting the hay crop.

[8] But, if the custom pleaded became a part of the contract, then title to three-fourths of the hay would have vested in the tenant, the reasonable market value of which was the measure of his damages for the breach. And in that event, and upon the principle of equitable estoppel, plaintiff would not be entitled to claim as an offset or credit against such value the amount she had expended after such breach in order to harvest the hay. Jackson v. Taylor, supra, and authorities there cited.

[9] Thus it will be seen that whether or not there was such a custom as pleaded by defendant, and whether or not, if existent, it entered into and became a part of the special contract of employment to harvest the hay, were material issues to be determined by the jury, since affirmative findings upon those issues, in connection with further finding that said special contract of employment was made, would perhaps largely increase

the amount of recovery by defendant upon his counterclaim for damages. As noted already, the alleged custom was not pleaded as expressly entering into the contract of employment, nor that it was known and assented to by plaintiff at the time, but plaintiff urged no exception to the sufficiency of the plea on that account. See Gano v. Palo Pinto Co., 71 Tex. 99, 8 S. W. 634; 12 Cyc. 1041. The jury did not return any finding ·upon that issue, but plaintiff does not complain of the failure of the court to submit it to them, nor is there an assignment in the record complaining of any supposed insufficiency of evidence to support the presumed finding by the court in favor of defendant on' that issue.

[10] It is well settled that a custom or usage, even when confined to particular locality, may be binding upon parties to a transaction, provided it measures up to certain tests, some of which are that it must be certain, uniform, and uninterrupted and so general and long continued in that community that the parties to be affected by it will be presumed to have knowledge of it. Mo. Pac. Ry. v. Fagan, 72 Tex. 127, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; 2 Elliott on Contracts, §§ 1677, 1678, 1697; 12 Cyc. 1034 to 1041, also 1069; Lawson on Usages & Customs, § 31, par. 62. According to the general rule, persons engaged in any particular business having usages and customs established in accordance with the legal requirements necessary to make them binding customs or usages are conclusively bound thereby, regardless of their actual ignorance thereof, in the absence of any contract having a contrary effect, but that the same are not binding upon a stranger to such business unless it be shown by proof that he was aware of such customs or usages and contracted with reference thereto. 2 Elliott on Contracts, §§ 1696, 1697; 12 Cyc. 1041 to 1047.

[11] A further rule of law is that caution should be exercised by courts in enforcing usages and customs; for, as said by Judge Storey:

"I own myself no friend to the almost indiscriminate habit of later years of setting up usages or customs in almost all kinds of business and trade to control, vary, or annul the general liability of parties under the common law, as well as under the commercial law. It has long appeared to me that there is no small danger in admitting such loose and inconclusive usages and customs, often unknown to the particular parties, and always liable to great misunderstandings and misinterpretations and abuses, to outweigh the well known and settled principles of law, and I rejoice to find that of late years the course of law, both in England and America, have been disposed to narrow the limits of the operation of such usages and customs, and to discountenance any further extension of them." 2 Elliott on Contracts, § 1674.

See, also, Wooters v. Kauffman, 67 Tex. 488, 3 S. W. 465.

These general observations are suggested for the guidance of the trial court upon another trial of this case.

We note in the statement of facts the testimony of plaintiff that, in addition to expenses she herself incurred to finish harvesting the hay, she also paid labor accounts incurred by defendant Taylor for labor performed in harvesting the hay prior to the seizure under the writ of sequestration, and it does not appear that she was allowed credit for sums so paid. Appellant has not raised the question whether or not that expense should be considered on the same plane with expenses incurred by· plaintiff herself, and for which she was not allowed credit; but, in view of another trial, we suggest that perhaps, under a proper showing, plaintiff might be entitled to credit for those sums, even if she be held to answer for the value of three-fourths of the hay crop.

For the reasons indicated, the judgment is reversed, and the cause remanded for another trial.

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes