**SOMERSET PIPE LINE CO. v. PIONEER OIL & REFINING CO.    (No. 7640.)**

(Court of Civil Appeals of Texas. San Antonio. Dec. 4, 1926.)

**1. Evidence ☞413—Allegation of offer held not subject to exception as tending to vary terms of contract; it being explanatory thereof.**

In seller's suit for breach of contract to deliver crude oil, allegation of answer that seller offered to sell oil for Mid-Continent posted price, which was generally understood to be price as posted for Kansas and Oklahoma, *held* good as against exception that it tended to vary terms of contract; it being explanatory thereof.

**2. Sales ☞378—Overruling exception to answer, alleging custom, general understanding, and prior understanding of buyer, held not error.**

In seller's suit for breach of contract to deliver crude oil, overruling exception to answer, alleging custom, general understanding, and understanding of buyer prior to entering contract, *held* not error.

**3. Appeal and error ☞1040(13)—Overruling exception to answer, alleging buyer's understanding of term "Mid-Continent price" in sales contract, held not error.**

In seller's suit for breach of contract to deliver crude oil, error, if any, in overruling exception to answer alleging buyer's understanding that "Mid-Continent price," as used in contract meant price posted for Kansas and Oklahoma, which meaning was binding on parties, in absence of proof that it meant something different from customary meaning, *held* not prejudicial.

**4. Customs and usages ☞15(2)—Overruling exception to answer, alleging meaning of "Mid-Continent price" for crude oil prior to contract, held not error.**

In seller's suit for breach of contract to deliver crude oil, overruling exception to answer, setting up custom or general understanding as to what "Mid-Continent" and "Mid-Continent posted price" meant, *held* not error; it alleging general custom not varying contract.

**5. Customs and usages ☞12(2)—Parties engaged in same business are presumed to understand trade terms.**

Parties engaged in same business or trade are presumed to know and understand terms used therein.

**6. Evidence ☞448—Evidence is admissible to explain ambiguous contract.**

When contract is ambiguous, it is admissible to introduce evidence to explain its meaning.

**7. Contracts ☞155—Contract is construed most strongly against parties making it.**

Contract will be construed most strongly against parties making it.

**8. Appeal and error ☞1050(1)—Error, if any, in admitting evidence as to usage, custom, and general understanding in oil trade, held harmless, in view of other evidence.**

In seller's suit for breach of contract for crude oil, error, if any, in admitting evidence of usage, custom, and general understanding as to meaning of terms "Mid-Continent" and "Mid-Continent posted price," *held* harmless, in view of other evidence sufficient to establish meaning thereof.

**9. Appeal and error ☞931(1)—Where no findings of fact and conclusions are filed, every presumption is indulged in favor of finding and judgment.**

Where there are no findings of fact and conclusions filed by court or requested by either party, every reasonable presumption will be indulged in favor of finding and judgment.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Suit by the Somerset Pipe Line Company against the Pioneer Oil & Refining Company. From a judgment for defendant, plaintiff appeals. Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Wurzbach, Stone & Mueller and Jas. D. Crenshaw, all of San Antonio, for appellant.

Henry C. King, Jr., and M. L. Roark, both of San Antonio, for appellee.

COBBS, J. This suit was filed by appellant against appellee upon the alleged breach of a written contract entered into by and between the parties, by which appellant agreed to deliver to appellee not more than 350 barrels of crude oil per day from October 20, 1921, to July 1, 1922, at and for the Mid-Continent price plus 40 cents per barrel of 42 gallons for all oil testing an average of 32 gravity or above; that the price for all oil sold should change with and be governed by the Mid-Continent market on light oil as posted from time to time by either the Prairie Oil & Company, the Magnolia Pipe Line Company, or the Sinclair Company; the price to go up with the first of said companies to raise it, and the price to go down with the first of said companies to lower it, the price of all oil sold under the contract being fixed at a premium of 40 cents per barrel above the Mid-Continent price so posted; that between October 20, 1921, and July 1, 1923, appellant sold and delivered to appellee 19,858.42 barrels of crude oil above 32 gravity, upon the dates stated, in the amount stated, and at the prices stated, according to account attached to said amended petition, marked "Exhibit A" and made a part thereof, amounting to the sum of $51,-019.35; that appellee paid to appellant, on the date stated in said account, the sum of $45,970.22, leaving a balance due appellant of $5,049.13; that the prices stated in said account were the prices posted by the Prairie Oil & Gas Company during said time at the Mid-Continent prices on light crude oils for North Texas, which during said time was a part of the Mid-Continent territory, plus 40 cents premium as provided in the contract; that appellee failed, neglected, and refused to pay to appellant said $5,049.15, though often requested so to do, and prayed for judgment for the amount of the debt, interest, costs of court, and general and special relief.

Appellee replied under oath:

"That some time on or about the 19th day of October, 1921, the plaintiff, acting by and through its president, Alexander Boynton, offered to sell to defendant the oil described in plaintiff's said petition at and for the 'Mid-Continent posted price' plus 40 cents per barrel."

Appellee further alleged that the term, "Mid-Continent posted price," for light crude oil, then and at that time meant in the oil trade and among buyers and sellers of oil generally, and was generally understood to be the price as posted for Kansas and Oklahoma, which price on said day and date of October 19, 1921, was the sum of $1.50 per barrel, and that the defendant, acting by and through its president, A. B. Slimp, under-stood the said price so offered by plaintiff to be as herein alleged, and, so believing and construing plaintiff's said offer, defendant then stated that it would be willing to purchase the said oil for said Mid-Continent price to wit, $1.50 per barrel plus 40 cents per barrel.

Appellee further alleged that appellant, Somerset Pipe Line Company, acting by and through its president, Alexander Boynton, dictated and prepared an instrument of writing, dated October 19, 1921, and presented the same to defendant for signature, being the same instrument described in plaintiff's petition, and that appellee, acting by and through its president, A. B. Slimp, read said instrument, and then understood the said term "Mid-Continent price" as used in said instrument to be and to mean the price posted for Kansas and Oklahoma as was then generally understood in the oil trade and among buyers and sellers of oil, and as published and quoted in reputable oil journals and publications, notably, the National Petroleum News, which price at that time was $1.50 per barrel, and, so understanding said contract and having in mind the said meaning and effect of the said term "Mid-Continent price" as is hereinabove alleged, defendant signed the said instrument of writing so dictated and prepared by plaintiff on the 19th day of October, 1921.

Appellee further alleged that the term "Mid-Continent," as applied and used in the oil trade, was first used about 25 years ago to designate the oil fields west of the Mississippi river, which was then Kansas and Oklahoma, and that Tulsa, Okl., is now, and has always since the discovery of oil, been the central market for light crude oil in the Mid-Continent field; that as oil was discovered in other fields in the region west of the Mississippi river, and east of the Rocky Mountains, the term "Mid-Continent posted price" was originally meant, in the oil trade, to apply to Kansas and Oklahoma fields exclusively; that the Mid-Continent posted price for Kansas and Oklahoma was used in the oil trade as a basis for oil produced from said other fields, notably, Electra, Burkburnett, and Ranger, generally called North Texas fields; that on October 1, 1921, the Prairie Oil & Gas Company posted a higher price for North Texas fields, to wit, $1.75, than for the Mid-Continent price, to wit, $1.50 per barrel; that, although the said North Texas fields were geographically located in what is sometimes called the Mid-Continent territory, said Texas fields produced only a minor portion of the light crude oil produced in said territory; that Kansas and Oklahoma have always produced by far the major portion of such crude oil in said territory, and the price posted for Kansas and Oklahoma was regarded in the oil trade generally as the Mid-Continent price, and further, that any other and different price as posted for the North

Texas fields was regarded in the oil trade as a special price, due to or on account of some local conditions and not regarded as the Mid-Continent price.

The case was tried by the court without a jury and resulted in a judgment in favor of appellee.

[1] The appellant filed numerous exceptions to the appellee's answer, which were each considered by the court and overruled. They raised practically the same questions in all the assignments urged against the pleading. We do not think the court erred in its ruling. There is no error shown in the allegation that, prior to the execution of the contract, the alleged offer tended to vary the terms of the contract, but on the contrary taken in connection with the contract, somewhat ambiguous itself, is simply explanatory thereof.

[2] There was no error in the ruling of the court in overruling the special exception to paragraph No. 7 of appellee's answer, alleging a custom, general understanding, and the understanding of the president of defendant prior to the entering into the contract. It does not vary the terms of the contract, but tends to explain the meaning thereof. The error, if any, was harmless.

[3] The same in respect to appellant's special exception to paragraph No. 8 of appellee's answer, which alleges that, at the time A. B. Slimp, president, read said instrument, he understood said Mid-Continent price as used in the contract meant the price posted for Kansas and Oklahoma, as was then generally understood in the oil trade among buyers and sellers of oil, and that that meaning was binding upon the parties, in the absence of allegations and proof showing that the parties to the contract meant and intended the term "Mid-Continent posted price" to mean something different from the general or customary meaning. The assignment is overruled.

[4] So also the fourth assignment is overruled that calls in question the court's overruling of appellant's special exception to paragraph 9 of appellee's answer, because it is immaterial what the Mid-Continent price meant in the oil trade at any time prior to the execution of the contract, and because any evidence introduced thereunder would be improper, irrelevant, and immaterial as tending to vary the terms of the contract. The court did not err in such ruling, because it was material to set up a custom or general understanding as to what Mid-Continent and Mid-Continent posted price meant; it is but alleging a general understanding or custom that does not vary the terms of the contract, but tends to explain the same, as though written therein.

[5] The parties were engaged in the same business or trade, and are presumed to know and to understand the same, and actual knowledge is not required to be made, but is presumed. Taylor v. Jackson (Tex. Civ. App.) 180 S. W. 1142; Holder v. Swift (Tex. Civ. App.) 147 S. W. 690; Silverstein v. Michau (C. C. A.) 221 F. 55; 17 C. J. 461.

[6, 7] When a contract is ambiguous, it is admissible to introduce evidence to explain its meaning. Likewise it will be construed most strongly against the parties making it. Western Assurance Co. v. Hillyer-Deutsch Co. (Tex. Civ. App.) 167 S. W. 816; St. Louis, B. & M. Ry. Co. v. Hicks (Tex. Civ. App.) 158 S. W. 192.

[8] Appellant's assignments of error 6 to 17, 18 to 29, 30, 31, and 32, 33 and 34, and 35, 36, 37, object to the introduction of the testimony of witnesses E. H. Ellinghausen, E. G. Schreck, E. T. Patterson, Fred S. Cook, and Spencer W. Robinson, on the sole ground that the testimony of each witness was irrelevant and immaterial to any issue in the case. This testimony was offered under the pleadings that we have already passed upon, raised by special exceptions and now offered in support of those allegations to establish usage, custom, and general understanding in the oil trade, as to the origin, extent, application, and meaning of the terms "Mid-Continent" and "Mid-Continent posted price."

These terms, of themselves, to the uninitiated, have no definite meaning, but they do have to those engaged in the oil business, as heretofore shown; so it becomes necessary and material to make the explanatory proof. This may be treated as a harmless error; still the record evidence is sufficient to establish the facts. There is no error in the ruling of the court, and the assignments are all overruled. Melton v. Cobb, 21 Tex. 539; Tevis v. Armstrong, 71 Tex. 59, 9 S. W. 134.

There is no merit in the thirty-eighth assignment, that the court erred in rendering a judgment in favor of appellee against the preponderance of the evidence in respect to the amount of oil sold and delivered to appellee under the contract. The court had all the evidence before it, and made its finding thereon, and we think it supports the judgment, and for that reason it will not be disturbed. The issue was as to the meaning of the term "Mid-Continent posted price" as used in the contract.

The amount or fixed price involved in this suit is 25 cents per barrel, being the difference between the price as posted for Kansas and Oklahoma, claimed by appellee to be the Mid-Continent posted price, and the price as posted for North Texas, claimed by appellant to be the Mid-Continent posted price.

The real and material issue and question of fact to be determined by the court was, by what oil field the price or measure was to be applied in reaching a judgment. There were two theories advanced, and much testimony introduced, to be determined between the price as posted for Kansas and Oklahoma, claimed by appellee to be the Mid-Continent posted price, and the price as posted

for North Texas, claimed by appellant to be Mid-Continent posted price. The court found the price to be as stated by the former and as contended for by appellee to be Mid-Continent posted price.

No useful purpose will be served by discussing in detail the facts which were before the court, which it settled in favor of appellee.

[9] There are no findings of fact and conclusions made and filed by the court, or requested by either party, so that every reasonable presumption will be indulged in favor of the court's finding and judgment. When that condition is apparent from the record, the judgment must be, as a matter of course, affirmed, and it is so accordingly ordered.