William E. BISHOP, Appellant,

v.

GENO DESIGNS, INC., Appellee.

No. 1505.

Court of Appeals of Texas,
Tyler.

March 29, 1982.

David B. Fagg, Dallas, for appellant.

Gene Wallace, pro se.

McKAY, Justice.

Appellee Geno Designs, Inc. (Geno) sued appellant William E. Bishop (Bishop), Joe Tucker (Tucker), Quality Quilting, and JTI for conversion of quilted fabric patterns, violations of the Texas Deceptive Trade Practices Act, and tortious interference with business relationships. Geno sought actual and exemplary damages, and recovery under the Deceptive Trade Practices Act. All defendants generally denied and counter-claimed for attorney's fees alleging that the deceptive trade practice claim was groundless. The trial court instructed a verdict against Geno on his deceptive trade practice claim, and, based upon a jury verdict, entered judgment favoring Geno against Bishop for $2,850.00 actual and $8,550.00 exemplary damages upon the conversion claim. From this judgment, Bishop appeals. We reverse and remand.

Appellant filed a "Notice of Potential Party of Interest" with this court informing us that bankruptcy proceedings were pending against Geno and that a trustee in bankruptcy had been appointed. The trustee in bankruptcy was not joined at the trial level and is not a party on appeal.

■ We first consider whether the absence of the trustee in bankruptcy precludes our consideration of this case. Geno filed its original petition in state court on August 28, 1978. The judgment favoring Geno was signed on March 19, 1980. An involuntary bankruptcy petition was filed against Geno on April 15, 1981, pursuant to 11 U.S.C.A. § 303 (1978).[1] Appellant Bishop filed his appeal bond on June 24, 1980.

■ 11 U.S.C.A. § 323(b) (1978) states, "The trustee in a case under this title has capacity to sue and be sued." Bankruptcy Rule 610 provides, "The trustee or receiver *may*, with or without court approval, prosecute or enter his appearance and defend any pending action or proceeding by or against the bankrupt, or commence and prosecute any action or proceeding in behalf of the estate, before any tribunal." (Emphasis added.) When the debtor is plaintiff in a suit, the trustee has three options: (1) to assume the prosecution of the pending action, (2) to consent to the debtor's continued prosecution of the action for the trustee's benefit, or (3) to decline to prosecute the pending action if it appears the prosecution will be fruitless. 2 *Collier on Bankruptcy* ¶ 323.02[b] (15th ed. 1981).

■ Rule 610 is clearly permissive. It vests the trustee with discretion in deciding whether to assume responsibilities in connection with a suit filed by the debtor. When the debtor is plaintiff, therefore, nonjoinder of the trustee in bankruptcy is not jurisdictionally fatal. *See e.g., Potts v. Potts*, 299 Ky. 216, 184 S.W.2d 987, 988

---

1. Filing an involuntary bankruptcy petition automatically stays proceedings *against* a debtor. 11 U.S.C.A. § 362(a)(1) (1978). The purpose of the automatic stay provision is to prevent interference with the debtor's property during an involuntary bankruptcy proceeding. Its design and intent is to "prevent a chaotic and uncon-
trolled scramble by creditors for the debtor's assets in a variety of uncoordinated proceedings in different courts." *In re Soltoff*, 1 B.R. 180, 181 (Bkpcy., E.D.Pa.1979). Geno's posture in this case is that of plaintiff, and we do not believe the automatic stay provision applies.

(1945). Moreover, the mere pendency of a bankruptcy proceeding does not divest the jurisdiction of the state court. *Fitch v. Jones*, 441 S.W.2d 187, 188 (Tex.1969); *Valley International Properties, Inc. v. Los Campeones, Inc.*, 568 S.W.2d 680, 686 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) *appeal dismissed* 440 U.S. 902, 99 S.Ct. 1205, 59 L.Ed.2d 450 (1979).

Geno pleaded that it designed, manufactured, and sold to retail establishments placemats for resale to the general public; that the placemats are oval in shape and consist of back-to-back pieces of patterned fabric quilted over a foam pad and bound with bias cut fabric; and that certain mills supply it with particular patterned fabric on an exclusive basis.

Geno further alleged that on or about March 21, 1978, and May 2, 1978, Quality Quilting and JTI, acting through appellant Bishop and Tucker, converted certain quilted fabric patterns exclusively owned by Geno; that the value of the goods was $2,850.00; that JTI "finished up" these goods by adding bias trim; and that the finished goods were sold to certain retailers. Geno also pleaded violations of the Deceptive Trade Practices Act and that Quality Quilting and JTI tortiously interfered with its business relationships with certain retailers.

Geno sought $2,850.00 actual damages for conversion, trebled actual damages under the Deceptive Trade Practices Act, $1,500.00 for tortious interference with its business relationships, and $25,000.00 exemplary damages.

The pertinent jury findings on appeal are: (1) Bishop converted quilted fabric patterns owned by Geno; (2) the reasonable cash market value of the quilted fabric patterns was $2,850.00 at the time and place of conversion; (3) Bishop acted with malice; (4) Geno was entitled to exemplary damages against Bishop; and (5) $15,000 in exemplary damages should be awarded by Bishop to Geno.

The trial court, based upon the jury verdict, rendered against Bishop for $2,850.00 actual damages and reduced exemplary damages to $8,550.00.

Appellee has filed no brief, and Rule 419, Tex.R.Civ.P., permits us to accept appellant's statement of the facts and record as true. Since appellant's brief raises both no evidence and factually insufficient evidence points, we choose not to avail ourselves of Rule 419. We, therefore, have read the entire record and our review of the evidence is guided by Calvert, 'No Evidence' and 'Insufficient Evidence' Points of Error, 38 Texas L.Rev. (1960).

Appellant's first five points of error basically assert that no evidence or insufficient evidence exists of a conversion of quilted fabric patterns, the quantity allegedly converted, or its market value. Appellant Bishop premises these points of error upon the distinction in the cloth industry between patterned fabrics, which are piece goods with a design on them, and fabric patterns, which are designs found on the fabric. These fabric patterns, or designs, are generally maintained on copper rollers.

Geno pleaded and submitted issues upon the conversion of "quilted fabric patterns." Geno's proof, however, centered around the conversion of quilted patterned fabrics. Rule 45 of the Texas Rules of Civil Procedure states, "All pleadings shall be so construed as to do substantial justice." In light of this rule, we believe Geno adequately pleaded a cause of action for conversion of quilted patterned fabric. He, therefore, was entitled to introduce evidence upon this cause of action.

We must now determine whether the evidence supports the jury findings against Bishop. Geno designs, manufactures, and sells textile products composed of printed fabric quilted over a foam pad which is backed with other printed or plain fabric. JTI also manufactures and sells items made of quilted material. Quality Quilting is in the business of quilting, which is sewing two different fabrics together with a filler pad between them. Quality Quilting quilted for Geno and JTI, as well as seventy or eighty others.

JTI purchased 2,850 yards of material from Quality Quilting through appellant Bishop, some of which was allegedly Geno's, for $1.00 per yard. This material was scrap or salvage material, some was improperly quilted, and some was water damaged. JTI returned approximately 1,800 yards of this material to Quality Quilting because it received a phone call from Gene Wallace (Wallace), President of Geno, saying it was stolen merchandise. The remaining yardage had already been made into placemats by JTI and sold to retailers. When Tucker, on behalf of JTI, returned the goods to Bishop, Bishop indicated that the yardage was not stolen; that he had received it from customers of Quality Quilting, including Geno; that Quality Quilting paid these customers, including Geno, for the scrap or salvage material by rerunning the goods or crediting the customer's account in the proper amount of money; and that Geno had not complained about Quality Quilting's retention of any material allegedly owned by Geno.

Geno receives fabric from three major mills, including Dan River and M. Lowenstein and Sons, Inc. Wallace testified that he designs fabric patterns or purchases them from artists; and that the mills manufacture piece goods with these fabric patterns on them, exclusively for Geno. Wallace stated that Exhibits one through seven, which were placemats made out of fabric imprinted with Geno's allegedly exclusively owned patterns, were not manufactured by Geno, because they were bound with a different bias cut fabric. It is Geno's position that JTI manufactured these placemats out of material converted by Bishop.

Geno's general manager, posing as a customer, visited JTI and saw fabric he believed was Geno's. He returned a few days later, went through some trash bags, found some fabric he thought was Geno's in the trash bags, and took the trash bags with him.

A conversion is complete where a person unlawfully and wrongfully exercises dominion and control over property of another to the exclusion or defiance of the right of possession of the owner or person entitled to be in possession of the property involved. *McVea v. Verkins*, 587 S.W.2d 526, 530–31 (Tex.Civ.App.—Corpus Christi 1979, no writ). See also, *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex.1971). In a suit for conversion the plaintiff must establish the identity of the property converted. *Hughes Blanton, Inc. v. Shannon*, 581 S.W.2d 538, 539 (Tex.Civ.App.—Dallas 1979, no writ); *Shaw's D. B. & L., Inc. v. Fletcher*, 580 S.W.2d 91, 94 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

The measure of damages in a conversion case is the value of the property converted at the time of the conversion, with legal interest. *Imperial Sugar Co. v. Torrans*, 604 S.W.2d 73, 74 (Tex.1980). It is essential that the market value of the property at the place and on the day of conversion be established to recover. *Engineered Plastics, Inc. v. Woolbright*, 533 S.W.2d 906, 908 (Tex.Civ.App.—Tyler 1976, no writ). Compensatory or actual damages are not measured in a conversion case by the price at which the goods in question were sold by the defendant but by market value at place and time of conversion. 15 Tex.Jur.3d *Conversion* § 44 (1981). The court in *Jackson v. Taylor*, 166 S.W. 413 (Tex.Civ.App.—Fort Worth 1914, no writ), held that evidence that an alleged converter sold the coverted property at a certain price was inadmissible. *Id.* at 414.

Although we believe there is some evidence in the record to support the jury finding that Bishop converted Geno's property, we ·do not believe that the proper measure of damages was proved. The testimony elicited on damages from Wallace was that the $2,850.00 actual damages requested reflected the amount JTI paid Bishop and Quality Quilting. No other evidence was introduced of the value of the property allegedly converted. We do not believe this evidence was sufficient to prove Geno's damages. We, therefore, sustain Bishop's points relating to market value and remand for trial on all issues. See Tex.R.Civ.P. 434; *Scholtz v. Sigel*, 601 S.W.2d 516, 518 (Tex. Civ.App.—Dallas 1980, no writ).

Bishop's sixth through tenth points are that the award of exemplary damages against him is supported by no or insufficient evidence. Exemplary damages are not recoverable unless an actual loss is sustained and supported by evidence. 17 Tex. Jur.2d *Damages* § 177 (1960). Since we have determined that actual damages were not properly proven, the award of exemplary damages may not stand. Appellant's sixth through tenth points of error are sustained.

Bishop's eleventh point is that the trial court erred in admitting scraps of fabric into evidence like that used by Geno which were found near JTI's place of business because this evidence could not be in any way connected with Bishop. In light of Geno's general manager's testimony concerning the fabric scraps he found, this evidence was cumulative and therefore harmless. We overrule appellant's eleventh point.

The judgment of the trial court is reversed and the cause is remanded.