899 F.2d 383
 22 Collier Bankr.Cas.2d 1331, Bankr. L. Rep. P 73,355
In re Shearn MOODY, Jr., Debtor.
Norman D. REVIE, Defendant-Appellant,
v.
W. Steve SMITH, Trustee of the Estate of Shearn Moody, Jr.,
Plaintiff-Appellee.
 No. 89-6039
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 April 27, 1990.
 Mike Maness, Houston, Tex., for defendant-appellant.
 Norman D. Revie, Houston, Tex., pro se.
 Ben B. Floyd, Randy A. Rios, Keven D. McDonald, Bonham, Carrington & Fox, Houston, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before REAVLEY, KING and JOHNSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 In bankruptcy proceedings, defendant Norman Revie had been ordered to turnover a rare coin, known as the 1879 Coiled Hair 10 Struck Gold Coin ("1879 Coin"), to W. Steve Smith, the Trustee of the Estate of Shearn Moody, Jr. ("Trustee"). Revie failed to comply with the order. On appeal, the district court sustained the bankruptcy court's finding that Revie had possession or control of the coin and ordered Revie to pay the Trustee the value of the coin, pre- and post-judgment interest, costs, and attorney's fees. We affirm.
 
 I.
 
 2
 This dispute centers around the whereabouts of a valuable four-dollar gold coin, minted in 1879. These coins, of which there are only ten to fifteen in existence, are so rare as to have a "pedigree" and are worth between $75,000 and $88,000. Revie, the bankrupt's former administrative assistant, had the 1879 Coin in question under his custody and control for approximately two years, until June of 1985 when he claims to have last seen it in a file cabinet stored in a room adjacent to his office.
 
 
 3
 Revie's office was located on the second floor of a residence in Galveston, Texas. In August of 1985, the Trustee and several assistants entered that residence to review the contents of Revie's office area, including the room in which the 1879 Coin was kept. They found the area was properly safeguarded, but did not find the 1879 Coin. Subsequently, the Trustee initiated this suit against Revie to turnover the 1879 Coin alleged to be in his possession. Alternatively, the Trustee sought to recover the fair market value of the 1879 Coin, based upon a theory of conversion.
 
 
 4
 After a hearing, the bankruptcy court found; (1) that the debtor owned the 1879 Coin; (2) that Revie was the last to have custody and control of the coin; (3) that no one who had access to the office knew of the existence or presence of the coin; (4) that there were no burglaries of the house during the relevant time period; and (5) that the coin did not disappear during or after the Trustee's entry into the office area.
 
 
 5
 Additionally, the court found that Revie had concealed the existence of the coin from Jane Ford, the original counsel for the debtor. Ford testified that, in listing assets, Revie had claimed that the estate included a collection of miscellaneous coins, valued at $25,000. In October of 1984, Ford and a Mr. Peterson, the original trustee of the estate, inquired about the coin collection. In response, Revie produced a few bent coins of little value, claiming that those coins comprised the entire collection--except for another gold coin, the Goliad coin, which had been lost in the mail and was the subject of a lawsuit against the United States Postal Service. However, in December of 1984 or January of 1985, he produced the 1879 Coin in a federal district court, during the suit regarding the Goliad coin.
 
 
 6
 After considering all of the evidence, the bankruptcy court found incredible Revie's claims that he did not have the 1879 Coin and did not know what happened to it. Accordingly, it ordered him to turnover the coin to the Trustee. Revie failed to do so. On appeal, the district court found that the bankruptcy court's findings were not "clearly erroneous" and that there was a legal basis for requiring Revie to pay the Trustee the value of the coin under either 11 U.S.C. Sec. 542(a) or the alternative theory of conversion.[1] Accordingly, the district court ordered Revie to pay $88,000, as well as pre- and post-judgment interest, costs, and attorney's fees. Revie appeals, claiming that the evidence does not support the bankruptcy court's findings and that the district court was without jurisdiction to order the relief granted.
 
 II.
 A. Evidence
 
 7
 The district court entered a judgment for damages against Revie under section 542(a) of the bankruptcy code and the alternative theory of conversion under Texas law. Because we find sufficient evidence to support the conversion claim, we need not reach the question of relief granted under section 542(a).
 
 
 8
 The unauthorized and unlawful assumption and exercise of dominion or control over the personal property of another, to the exclusion of or inconsistent with the owner's rights is recognized in Texas as a conversion. Bankers Life Ins. Co. v. Scurlock Oil Co., 447 F.2d 997, 1004 (5th Cir.1971) (applying Texas law); Bishop v. Geno Designs, Inc., 631 S.W.2d 581, 584 (Tex.App.--Tyler 1982, no writ). "Conversion may be direct or constructive...." Killian v. Trans Union Leasing Corp., 657 S.W.2d 189, 192 (Tex.App.--San Antonio 1983, writ ref'd n.r.e.). The wrongful intent to convert another's property is not an essential element; the defendant need only intend to do an act amounting to conversion. McVea v. Verkins, 587 S.W.2d 526, 531 (Tex.Civ.App.--Corpus Christi 1979, no writ). "[A] good faith but unauthorized retention of property can be a conversion." Geders v. Aircraft Engine & Accessory Co., 599 S.W.2d 646, 651 (Tex.Civ.App.--Dallas 1980, no writ). Thus, in a suit for conversion, a plaintiff must show only that the defendant wrongfully exercised dominion or control over the property to the exclusion of, or inconsistent with, the plaintiff's rights, the identity of the property converted, and the value of the property at the time of conversion. See Bishop, 631 S.W.2d at 584.
 
 
 9
 The bankruptcy court found that Revie was in possession, custody, or control of the coin. That finding must be left undisturbed unless clearly erroneous. See Wilson v. Huffman (In re Missionary Baptist Found. of Am.), 818 F.2d 1135, 1142 (5th Cir.1987). Given Revie's misrepresentations regarding the coin and the evidence indicating that he was the only person who had access to and knowledge of the existence of the 1879 Coin, we accept, as did the district court, the bankruptcy court's finding that Revie had possession or control of the 1879 Coin at the time of those proceedings.
 
 
 10
 Accepting the bankruptcy court's conclusions regarding possession and valuation, the district court found the elements of conversion established when Revie failed to turn the 1879 Coin over to the Trustee. Specifically, the district court found that his inaction amounted to an exercise of control inconsistent with the Trustee's rights. Revie argues only with the underlying factual finding regarding possession. Because we do not believe that determination was clearly erroneous, we find that the Trustee was entitled to damages proximately caused by the conversion.
 
 B. Jurisdiction
 
 11
 Revie, however, contends that because the district court was acting as a court of review, it was without jurisdiction to grant any relief beyond the bankruptcy court's Turnover Order. This argument ignores the jurisdictional bases of the district court's authority over bankruptcy proceedings. District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. Sec. 1334(b). Although a district court may refer title 11 cases to bankruptcy judges, id. Sec. 157(a), it may withdraw, in whole or in part, any title 11 case referred to the bankruptcy court on its own motion or on timely motion of any party for good cause, id. Sec. 157(d). See Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 998 (5th Cir.1985). "The cumulative effect of the grant of original jurisdiction to the district court and its right to withdraw the reference in a bankruptcy case or related matter ... leaves little doubt that the district court may exercise jurisdiction broadly...." Id.
 
 
 12
 On August 26, 1986 reference of the debtor's bankruptcy case and all related adversary proceedings, including the suit against Revie, was withdrawn from the bankruptcy court to the district court. While the court apparently considered itself to be acting as an appellate court with regard to the bankruptcy court's factual findings, it also was entitled to exercise its original jurisdiction. See In re Powelson, 878 F.2d 976, 979-80 & 980 n. 4 (7th Cir.1989). As an exercise of original jurisdiction, we believe the court had authority to reshape the Trustee's relief and award damages, costs, and attorney's fees. Accordingly, the judgment is AFFIRMED.
 
 
 
 [1]
 Although an appeal of the Turnover Order was originally dismissed on the ground that it was an interlocutory order, this court reversed and remanded, finding that the order was final and therefore appealable. Smith v. Revie (In re Moody), 817 F.2d 365 (5th Cir.1987)